## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **AUGUSTA A. DELBRIDGE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case Number 2:13-cv-1306-SLB** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Augusta Delbridge brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security denying her application for a period of disability, disability insurance benefits ["DIB"], and supplemental security income ["SSI"]. Upon review of the record, the submissions of the parties, and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability, DIB, and SSI on June 8, 2010, alleging a disability onset date of April 19, 2010. (R. 48, 117.)[1] This application was denied on July 21, 2010 by the Social Security Administration ["SSA"], (R. 57), and plaintiff subsequently requested a hearing before an Administrative Law Judge ["ALJ"], which was

---

[1] Reference to a document number, ("Doc.___"), refers to the number assigned to each document as it is filed in the court's record. References to page numbers in the Commissioner's record are set forth as ("R.___").

held on February 7, 2012, (R. 27). After the hearing, the ALJ found that plaintiff was able to perform her past relevant work as a teacher's aide and a cashier and that she was capable of making a vocational adjustment to other occupations, such as packager of small parts, price tagger, and storage facility clerk, which are jobs that exist in significant numbers in Alabama and in the national economy. (R. 21-22.) In light of these findings, the ALJ denied plaintiff's request for a period of disability, DIB, and SSI on February 16, 2012. (R. 23.)

On April 11, 2012, plaintiff petitioned the Appeals Council to review the ALJ's decision, (R. 7-8), and on May 30, 2013, the Appeals Council denied plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner of Social Security. (R. 1.) Following denial of review by the Appeals Council, plaintiff filed an appeal in this court on July 12, 2013. (Doc. 1.)

## II. <u>STANDARD OF REVIEW</u>

In reviewing claims brought under the Social Security Act, this court "is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]; rather the court must scrutinize the record as a whole to determine if the decision reached is

reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529

(11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))

(internal quotations and other citation omitted). "The Commissioner's factual findings are

conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin*,

894 F.2d at 1529; *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence

is more than a scintilla and is such relevant evidence as a reasonable person would accept as

adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178

(11th Cir. 2011) (internal quotations and citations omitted).

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius*, 936

F.2d at 1145. "[N]o . . . presumption of validity attaches to the [Commissioner's] conclusions

of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. <u>DISCUSSION</u>

## A. THE FIVE-STEP EVALUATION

The regulations require the Commissioner to follow a five-step sequential evaluation

to determine whether a claimant is eligible for DIB or SSI.[2] *See* 20 C.F.R. § 404.1520(a)(1)-

---

[2] The Regulations state:

> The sequential evaluation process is a series of five "steps" that we follow in
> a set order. . . . If we can find that you are disabled or not disabled at a step, we
> make our determination or decision and do not go on to the next step. If we
> cannot find that you are disabled or not disabled at a step, we go on to the next
> step. Before we go from step three to step four, we assess your residual
> functional capacity. . . . We use this residual functional capacity assessment at
> both step four and step five when we evaluate your claim at these steps.

(2); *Bowen v. City of New York*, 476 U.S. 467, 470 (1986). For the purposes of this evaluation, the meaning of disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1); 42 U.S.C. § 423(d)(1)(A). The specific steps in the evaluation process are as follows:

### 1. Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).[3] If the claimant

---

20 C.F.R. § 404.1520(a)(4).

[3] The Regulations define "substantial gainful activity":

> (a) *Substantial work activity*.  Substantial work activity is work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

> (b) *Gainful work activity*.  Gainful work activity is work activity that you do for pay or profit.  Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

> (c) *Some other activities*.  Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572.

is engaged in substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or her age, education, and work experience.  20 C.F.R. § 404.1520(b); § 416.920(b). "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012).[4]

The ALJ found that plaintiff had not engaged in substantial gainful activity since April 19, 2010, the alleged onset date. (R. 15.)

### 2. Severe Impairments

If the claimant is not engaged in substantial gainful activity,  the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii), (c); § 416.920(a)(4)(ii), (c). "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); § 1382c(a)(3)(D). The regulations provide: "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find

---

[4] Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it.  *Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority*."  11th Cir. R. 36-2 (emphasis added).

that you do not have a severe impairment and are, therefore, not disabled.  We will not consider your age, education, and work experience." 20 C.F.R. § 404.1520(c); § 416.920(c).

An impairment is "severe" if it "significantly limits [a] claimant's physical or mental ability to do basic work activities."[5] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. § 404.1520(c); 20 C.F.R. § 404.1521(a). When an impairment "is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience," it will be classified as non-severe. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* SSR 85-28, 1985 WL 56856 (1985). A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987); *see also* 20 C.F.R. § 404.1523; § 416.923. A claimant has the burden to show that she has a severe impairment or combination of impairments. *Reynolds-Buckley*, 457 F. App'x at 863.

---

[5] Basic work activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out and remembering simply instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b)(1)-(6).

The ALJ found that plaintiff had severe impairments of "neck strain and carpal tunnel syndrome in right wrist." (R. 15.)

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the duration requirement and whether it is equivalent to any one of the listed impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d)-(e); § 404.1525; § 404.1526. Listed impairments are so severe that they prevent an individual from performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings]. If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d); § 416.920(d). The claimant has the burden of proving that her impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 457 Fed. App'x. at 863.

The ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing. (R. 16.)

### 4. Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that her impairment prevents her from performing her past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f); § 416.920(a)(4)(iv), (f). At step four, the Commissioner "will first compare [the Commissioner's] assessment of [the claimant's] residual functional

capacity ["RFC"] with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1560(b); § 416.960(b). "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it." 20 C.F.R. § 404.1560(b)(1); § 416.960(b)(1). If the claimant is capable of performing her past relevant work, the Commissioner will find that she is not disabled. 20 C.F.R. § 404.1560(b)(3); § 416.920(f). The claimant bears the burden of establishing that the impairment prevents her from performing past work. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff has a high school education and was an individual closely approaching advanced age on the alleged onset date. (R. 21.) The ALJ made the following findings regarding plaintiff's RFC:

> [T]he claimant has the residual functional capacity to perform light work . . . with the clarifications or deviations as noted hereafter. The claimant can lift and/or carry up to twenty pounds occasionally and up to ten pounds frequently. She can sit for up to two hours at a time in order to complete a normal, eight-hour workday. She can stand and/or walk for up to two hours at a time in order to complete a normal, eight-hour workday. She can use her left upper extremity and both of her lower extremities without limitation in regards to pushing or pulling movements. The claimant experiences a moderate level of pain in her back and right arm, which occasionally has only a moderate affect [sic] on her ability to concentrate during an eight-hour workday. She has moderate limitations regarding the use of her right upper extremity, which only occasionally affects her ability to perform repetitive actions such as simple grasping, pushing or pulling arm controls or performing fine manipulation. The claimant has no communicative or visual limitations.

(R. 16.)

**5. Other Work in the National Economy**

If the claimant establishes that she is unable to perform her past relevant work, the Commissioner must show that the claimant—in light of her RFC, age, education, and work experience—is capable of performing other work that exists in substantial numbers in the national economy. *Reynolds-Buckley*, 457 F. App'x at 863; *see also* 20 C.F.R. § 404.1520(c)(1); § 416.920(g). The regulations provide:

> If we find that your residual functional capacity does not enable you to do any of your past relevant work . . . we will use the same residual functional capacity assessment when we decide if you can adjust to any other work. We will look at your ability to adjust to other work by considering your residual functional capacity and the vocational factors of age, education, and work experience . . . . Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

20 C.F.R. § 404.1560(c)(1); § 416.960(c)(1). If the claimant is not capable of performing such other work, the Commissioner must find the claimant disabled. 20 C.F.R. § 404.1520(g); § 416.920(g).

The ALJ consulted a Vocational Expert ["VE"] to determine whether any jobs exist in the national economy that plaintiff could perform, considering her RFC, age, education, and work experience. The VE testified that an individual with plaintiff's limitations and vocational factors could perform plaintiff's past relevant work as a teacher's aide and a cashier, and that individual could perform the jobs of packager of small parts, price tagger, and storage facility clerk, which are jobs that exist in significant numbers in Alabama and in the national economy. (R. 43-44.)

9

Because the ALJ found that jobs consistent with plaintiff's RFC and vocational factors exist in significant numbers, the ALJ found that plaintiff was not disabled. (R. 22.)

## B. MS. DELBRIDGE'S CLAIMS

Plaintiff argues that (1) there is no evidence in the record to support the ALJ's finding that plaintiff can perform a restricted range of light work, and (2) the ALJ erred in failing to identify the following impairments as "severe": "shoulder pain with prominent muscle spasm, headaches of the occipital neuralgia type and lumbosacral pain with SI joint inflammation." (Doc. 8 at 2-3, 12.) Upon reviewing the record and the parties' briefs, the court finds that the Commissioner's decision is due to be affirmed.

### 1. Substantial Evidence Supporting the ALJ's Findings

Plaintiff argues that the record contains no evidence upon which the ALJ could rely to find that plaintiff can perform a restricted range of light work. Furthermore, plaintiff contends that three emergency room visits and a consultative neurological evaluation by Dr. Hisham Hakim, a non-treating medical source, demonstrate that plaintiff is disabled. (Doc. 9 at 6-7.)

Social Security Ruling 96-7p explains the two step process set out in 20 C.F.R. § 404.1529 and § 416.929 that the ALJ must follow[6]: "First, the adjudicator must consider

---

[6] Apparently the Eleventh Circuit considers the standard set out in the regulations and the standard in *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991), as one and the same. *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) ("Furthermore, the ALJ cites to 20 C.F.R.§ 404.1529, which contains the same language [as *Holt*] regarding the subjective pain testimony that this Court interpreted when initially establishing its

whether there is an underlying medically determinable physical or mental impairment—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the individual's pain or other symptoms." This determination does not consider the "intensity, persistence, or functionally limiting effects of the individual's symptoms." SSR 96-7p. If the ALJ finds that the plaintiff's case survives the first step, then

> the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p. The ALJ found that, under step one, "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," but under step two, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 17.)

_____

three-part pain standard. In citing to § 404.1529 and based on the findings and discussion, it is clear that the ALJ applied this Circuit's pain standard [from *Holt*].""). Because SSR 96-7p offers an in-depth explanation of the regulations and is more recent than *Holt*, the court looks to it for guidance.

The ALJ first reviewed plaintiff's testimony about the nature of her pain:

> At the hearing, the claimant testified that she was unable to work secondary to neck pain, back pain and right arm pain. She stated that [her] neck pain worsens with activity and that her arm pain causes her to drop objects. She also testified that her back pain worsens with increased activity. The claimant rated her neck and back pain as being a "seven", on a standard one to ten point pain scale. She stated that her pain was not constant in nature but that it came and went with activity. The claimant testified that she could walk for about fifteen minutes, sit for about ten minutes and stand for about ten to thirty minutes before her pain level increased to the point that she would have to adjust her posture. She also alleged problems with bending, standing and lifting. She indicated that she had to lie down about three times per day for up to thirty minutes at a time because of her pain . . . [and] that she had carpal tunnel syndrome in her right hand and bad discs in her lumbar spine. She indicated that she had been experiencing this level of pain ever since her car accident roughly twenty years earlier.

(R. 17.)

The ALJ found that plaintiff's testimony was unsupported by the record for several reasons. First, the record contains only four relevant medical reports, and none support plaintiff's testimony about the limiting effects of her pain. The first three medical reports document plaintiff's visits to the emergency room on February 27, 2010, October 21, 2010, and January 20, 2012. On February 27, 2010, plaintiff presented to the ER for chronic neck pain and pain radiating through her right arm. (R. 187.) Plaintiff reported that "she had no acute event, that this is simply a chronic problem that flares up on her periodically." (*Id.*) Plaintiff received an injection during that visit and did not seek further treatment, according to the record, until she returned to the ER on October 21, 2010 with complaints of back and neck pain. During this visit, plaintiff received an injection and a prescription for Lodine, an

anti-inflammatory medication. (R. 202.) During her last visit on January 20, 2012, plaintiff complained of neck and back pain and numbness in her right hand. (R. 199.) During her general examination, plaintiff had a 5/5 grip strength in her right hand. (*Id.*) Plaintiff received two injections and another prescription for Lodine. (*Id.*)

The ALJ noted that "[w]hile the claimant has reported experiencing chronic pain on a few occasions, she has never been on any type of narcotic pain relievers and has simply taken over-the-counter medications or only anti-inflammatory medications prescribed to her during one-time visits to the emergency room." (R. 19.) Additionally, the ER notes show that plaintiff was only in mild distress and never in acute distress during those visits. (*See* R. 20, 187, 199, 202.) The ALJ correctly found that these "records only document sporadic, infrequent treatment for [plaintiff's] alleged symptoms " (R. 17), which does not support plaintiff's pain testimony. *See Griffin v. Comm'r of Soc. Sec.*, 560 Fed. App'x 837, 843 (11th Cir. Mar. 19, 2014) (finding that "[t]he sporadic nature of [the plaintiff's] treatments supported the ALJ's finding that his statements regarding his symptoms were not fully credible").

Furthermore, the ALJ thoroughly discussed his reasons for rejecting the medical opinion of Dr. Hisham Hakim, a non-treating source who examined plaintiff during a neuropsychological evaluation. (R. 18.) *See* 20 C.F.R. § 404.1502 ("Nontreating source means a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you."). During the

13

examination, Dr. Hakim found that plaintiff had a decreased range of motion in her neck on the right side but adequate neck flexion and extension, that plaintiff had almost equal grip strength in each hand, and that plaintiff experienced tenderness in her back at the SI joint and sciatic notch. (R. 192.) Plaintiff could bend forward 60-70 degrees but could not touch her toes. (*Id.*) Based on this evaluation, Dr. Hakim gave the following diagnosis:

> 1. Neck and shoulder pain with prominent muscle spasm appeared to have musculoskeletal pain with headache as well as occipital neuralgia type. 2. Back pain lumbosacral area going down to the buttock area more on the right side and I believe more symptoms are arising from SI joint inflammation bilateral. 3. Carpal tunnel syndrome on the right side. Clinically rated to be moderate.

(R. 193.) Dr. Hakim opined that "the patient will have difficulty performing gainful employment on a fulltime base on her above medical condition," (*id.*), and in a Clinical Assessment of Pain form, he indicated that "[p]ain is present to such an extent as to be distracting to adequate performance of daily activities or work," (R. 194).

The ALJ assigned little weigh to Dr. Hakim's opinion, finding that "Dr. Hakim based all of his findings on the claimant's subjective allegations alone, and no formal testing was performed which would warrant the diagnosis of carpal tunnel syndrome." (R. 20.) As the ALJ pointed out, the "record as a whole is . . . void of any nerve conduction studies that would justify this diagnosis." (R. 19.)  Dr. Hakim's opinion that plaintiff's pain would prohibit her from performing daily activities or work is unsupported by the medical evidence of record, and the ALJ did not err in assigning little weight to his opinion.

The ALJ also considered conflicting reports in the record. For example, plaintiff told Dr. Hakim that she had not worked since 1991, but a summary of plaintiff's yearly earnings shows that she earned money from 1992 through 1996 and from 2006 through 2010. (R. 19, 130, 191.) Additionally, plaintiff testified that she has not tried to work since she filed her application for DIB and SSI, but on a Function Report dated July 12, 2010, plaintiff wrote that she needed assistance working her computer because she was applying for jobs online. (R. 40, 158.) Plaintiff's daily activities were inconsistent with her testimony as well. Plaintiff testified that she can sit no longer than ten minutes, stand no longer than ten to thirty minutes, and that she must lie down for thirty minutes at a time about three times a day. (R. 35-37.) However, plaintiff's daily activities consisted of watching movies, reading, regularly attending church, and visiting her son at his college. (R. 39.) Plaintiff also stated that she can work a weed eater with help, likes planting flowers, and can drive long distances. (R. 38, 157.) These activities belie plaintiff's contention that her pain is disabling.

The ALJ relied on substantial evidence in discrediting plaintiff's testimony about the limiting effects of her pain and in finding that plaintiff can perform a restricted range of light work.

### 2. Consideration of Additional Impairments

Plaintiff next argues that she has three additional severe impairments that the ALJ erroneously failed to identify. (Doc. 8 at 3.) Dr. Hakim diagnosed plaintiff with the three impairments—shoulder pain with prominent muscle spasm, headaches of the occipital

neuralgia type, and lumbosacral pain with SI joint inflammation—that plaintiff contends the ALJ should have identified as severe. (*See* R. 193.) The ALJ found that plaintiff had severe impairments of only neck strain and carpal tunnel syndrome in the right wrist. (R. 15.)

"Nothing requires that the ALJ must identify, as step two, all of the impairments that should be considered severe. Instead, at step three, the ALJ is required to demonstrate that it has considered all of the claimant's impairments, whether severe or not, in combination." *Heatly v. Comm'r of Soc. Sec.*, 382 Fed. App'x 823, 825 (11th Cir. June 11, 2010); *see also* 382 Fed. App'x at 824-25 ("Even if the ALJ erred in not indicating whether [a condition] was a severe impairment, the error was harmless because the ALJ concluded that [the claimant] had a severe impairment: and that finding is all that step two requires."). Here, the ALJ found at step three that, "[e]ven when the effects of the claimant's impairments are considered singly and in combination, the record does not establish that the claimant is subject to an impairment or combination of impairments that meets or equals the requirements of any section of the Listings of Impairments," thus showing that the ALJ considered all of plaintiff's impairments, both severe and non-severe. *See Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (finding that "[t]he ALJ's determination evidence[d] consideration of the combined effect of appellant's impairments," where the ALJ stated that the claimant did not have "an impairment or combination of impairments" that met or medically equaled a listed impairment).

16

Furthermore, the ALJ's assessment of plaintiff's RFC demonstrates that the ALJ considered and accounted for plaintiff's impairments. The ALJ placed limitations on the weight plaintiff can lift or carry and the time plaintiff can sit, stand, or walk before she must adjust. (R. 16.) Additionally, the ALJ specifically discussed plaintiff's back pain, stating that "[t]he claimant experiences a moderate level of pain in her back and right arm, which occasionally has only a moderate affect [sic] on her ability to concentrate during an eight-hour workday." (*Id.*) The court finds that the ALJ considered all of plaintiff's impairments and did not err in choosing not to identify shoulder pain with prominent muscle spasm, headaches of the occipital neuralgia type, and lumbosacral pain with SI joint inflammation as severe impairments.

## IV. CONCLUSION

Based on the reasons set forth above, the decision of the ALJ, as adopted by the Commissioner, denying plaintiff's claim for a period of disability, DIB, and SSI is due to be affirmed. An Order affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 11th day of February, 2015.

SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE

17